TRUMBAUER et al., Appellants, v. RUST, Respondent.

(154 N. W. 801.)

(File No. 3787.   Opinion filed November 16, 1915.)

1. **Conveyancing—Deed—Will Distinguished From Deed—Passing of Present Interest, Effect—Manner of Execution, Test of Validity—Creation of Trust.**

   If an instrument pass a present interest or right in realty, even though enjoyment thereof be postponed until grantor's death, it is a deed; if it pass no present interest or right, but is dependent upon death of maker to consummate it, it is testamentary in nature, notwithstanding it be denominated a deed and is a deed in form and in some essential characteristics.   Held, further, that if testamentary in character, its validity depends upon whether it was executed in manner prescribed by statute of wills; and, if not valid, it will not even create a trust in favor of grantee.

2. **Conveyancing—Deed—Construction of Instrument as—Intent of Grantor.**

   In determining whether or not a writing is a deed, the controlling inquiry, and the ultimate object of inquiry should be: What was the maker's intent?   So held, in determining whether the instrument was a deed or a will.

3. **Contract—Deed—Intention of Maker—Rules for Determining Intent—Intrinsic Evidences.**

   In interpreting instruments of writing, the intent of the maker is to be gathered, primarily, from the language of the writing itself.   Secs. 928, 1248, Civ. Code.   In doubtful cases, facts and circumstances under which the writing was made may be considered.   Among those things appearing in the writing, and which legally tend to show an intent to make a deed, are designation of it as a deed, recital of consideration, particular description of land, covenants of title, the sealing and acknowledging thereof; its delivery and recording.

4. **Contracts—Doubtful Writing—Interpretation of—Statute.**

   Under Civ. Code, Sec. 1252, requiring a contract to receive such interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties, the question of how it must be interpreted to make of it a valid instrument should always be considered.   This rule of interpretation applies with peculiar force in case of the making of an instrument the construction of which arises after death of

makcr. So held, in determining whether the instrument in question is a deed or a will.

5. **Contracts—Deed or Will—Instrument Construed After Death of Maker—Passing of Title, Intent—Rule of Construction.**

Where, in determining the character of an instrument affecting realty, for the purpose of ascertaining whether it is a deed or a will, and where it is beyond dispute that the intent of maker was to vest title in grantee, at least after maker's death, and that he died without undoing whatever he attempted to accomplish through the instrument, held, that, to declare such instrument invalid, thereby preventing carrying out those intents, and resulting in vesting the property otherwise than maker intended, is a thing the court should not do unless driven thereto by some express provision of law; to avoid which result the intent of the maker to do that which the law does not sanction should be clearly and satisfactorily established.

6. **Wills—Interpretation of Instrument as—As a Deed—Intent, How Considered.**

Unless the clear intent of the maker is to the contrary, a writing not so executed as to be good as a will, should be given effect as a deed, and a writing not so executed as to be good as a deed should be given affect as a will.

7. **Conveyancing—Character of Instrument—Deed, Not Will—Intent to Transfer Fee Title, Evidences of—Life Estate in Grantors.**

Where an instrument in form of a warranty deed, with usual covenants of seizin and of right to sell and convey, and executed by husband and wife as a deed, purporting to convey certain land to grantors' son, but executed subject to the condition that it was to take effect only after death of both grantors, the survivor to have possession during his or her natural life only, with the further condition that grantee agreed to pay certain sums of money to grantors' other children within six months after death of survivor, the instrument being left with party taking the acknowledgment with instructions to deliver it to grantee, constituted a deed, under which present title passed, the enjoyment of which was postponed until death of grantors, and it reserved to grantors an estate during their lives; and upon its delivery to grantee, both himself and grantors' other children became possessed of rights thereunder not changeable by any future act of the makers; it not appearing that the makers had no other property, or that there was any provision made to pay their debts.

Appeal from Circuit Court, Union County. Hon. JOSEPH W. JONES, Judge.

Action by Emma Josephine Trumbauer and others, against

Wallace Rust, to cancel an alleged deed of conveyance of land, and to establish title in plaintiffs. From a judgment for defendant, plaintiffs appeal. Affirmed.

Chas. H. Bartelt, and Edwin R. Winans, for Appellants.

French & Orvis (Elwood & Tourgee, of counsel), for Respondent.

(1) To point one of the opinion, Appellant cited: McGarigle v. Orphan Asylum, 145 Cal. 695, 1 L. R. A. (N. S.) 315; Donald v. Nesbet, 89 Ga. 290, 15 S. E. 376; Sperber v. Balster, 66 Ga. 317; Reel v. Hazelton, 37 Kan. 321, 15 Pa. 177; Pinkham v. Pinkham, 55 Neb. 729, 76 N. W. 441; Carleton v. Cameron, 54 Tex. 72, 38 Am. Rep. 620; Note to Ferris v. Neville, 89 A. M. St. Rep. at 494.

Respondent cited: Graves v. Atwood, 52 Conn. 512, 52 Am. Rep. 610; Achorn v. Jackson, (Me.) 29 Atl. 989; Schackelton v. Sebree, 86 Ill. 616.

(3) To point three of the opinion, Respondent cited: Novotny v. Danforth, 9 S. D. 301; Palmer Oil & Gas Co. v. Blodgett, (Cal.) 57 Pac. 947, 948.

(4) To point four of the opinion, Respondent cited: Civ. Code, Secs. 928, 930, 931, 935, 1248, 1252; Hunt v. Hunt, (Ky.) 68 L. R. A. 180.

(7) To point seven of the opinion, Appellants cited: Murphy v. Gabbert, 166 Mo. 596, 89 Am. St. Rep. 736, 66 S. W. 536; Leaver v. Gauss, 62 Iowa, 314, 17 N. W. 522; Habergham v. Vincent, 2 Vessey, Jr., 230; Babb v. Harrison, 70 A. M. Dec. 203; Ransom et al. v. Pottawattamie County, (Iowa) 150 N. W. 657; Hester v. Young, 2 Ga. 31.

Respondent cited: Civ. Code, Secs. 214, 219, 247, 253, 258; Ferguson v. Mason, 19 N. W. (Wis.) 420; Bunch et al. v. Nickus et al., 7 S. W. (Ark.) 563; Wilson v. Carrico, (Ind.) 40 N. E. 50.

WHITING, J.    The only question before us upon this appeal is the sufficiency of the facts—both those admitted by the pleadings and those found by the trial court—to sustain the judgment of such court. Such facts are as follows: On August 4, 1908, a purported deed to certain land was executed and acknowledged by the owner and his wife. The grantee therein was the son of the makers of such writing. The writing was left with

the party who took the acknowledgment, under instructions to such party that he deliver the same to the grantee; and he did deliver it to such grantee prior to the death of either of the makers. Both makers died before this action was brought. The writing was in form a full warranty deed, purporting to be given for a large money consideration; its granting clause reading, "do hereby grant, bargain, sell and convey unto the said party of the second part, his heirs and assigns forever"; its habendum clause being in usual words, among its covenants being one that the makers "have good right to sell and convey the same in manner and form aforesaid", its closing words being those usually found in a deed. But it recited that it was subject to two conditions: "This deed is to go into effect, only after the death of both * * * grantors, the survivor to have full possession of the land during his or her natural life only"; and, "the grantee herein agrees to pay" certain sums of money to the other children of the grantors "within six months after the death of the survivor." The covenant against incumbrances was:

"That the same are free from all incumbrances except that the payment of the above sums as stated shall be a legal lien against said real estate until paid."

The trial court held the writing to be a deed.

[1] Cases almost without number have been before the courts of other jurisdictions wherein such courts have been called upon to determine whether a writing, purporting to convey real property, was a deed or a testamentary conveyance. There is no conflict of authority as to what distinguishes a deed from a testamentary conveyance. If it pass a present interest or right, even though the enjoyment thereof be postponed until the death of the grantor, it is a deed; if it pass no present interest or right, but is dependent upon the death of the maker to consummate it, it is testamentary in its nature, notwithstanding it be denominated a deed and is a deed in form and in some essential characteristics. If testamentary in character, its validity will depend upon whether it was executed in the manner prescribed by the statute of wills; and, if not valid, it will not even create a trust in favor of the grantee. O'Gorman v. Jolley, 34 S. D. 26, 147 N. W. 78.

[2] In determining whether or not a writing is a deed, the controlling question and the ultimate object of inquiry should, in

every case, be:   What was the intent of the maker?   If it was
to postpone title and enjoyment until after his death, the writing
is not a deed; if it was to confer title but to postpone the enjoy-
ment thereof, it is a deed.   Stroup v. Stroup, 140 Ind. 179, 39 N.
E. 864, 27 L. R. A. 523.   Recognizing the above as the settled
law, we find respondent contending that the writing before us
was "a present conveyance of a future estate in fee, * * * re-
serving to the grantors a life estate and right of possession";
while appellants contend that it was "a testamentary instrument—
an attempt to arrange the affairs of the grantors, prior to their
death, in such manner as would save to them both the title and
right of possession during their lives."

An examination of the numerous cases wherein other courts
have been called upon to determine whether a writing was a deed
or a testamentary conveyance shows that, while, in every case,
the court has sought to determine the intent of the makers and
has held the writing to be either a deed or a testamentary convey-
ance according as the ascertained intent of the grantor was to
convey a present interest with enjoyment thereof postponed, or
was to postpone both the vesting of the interest and the enjoy-
ment thereof, each case stood upon its own peculiar facts—the
wording of the particular writing, the declarations of the maker
at the time of executing the writing, in fact all surrounding cir-
cumstances tending to reveal the intent of the maker.   As dif-
ferent minds will naturally reach different conclusions, though
the evidence may be the same, it is not strange that we find, as
we do, opinions from different tribunals which cannot be har-
monized; yet a careful reading of each opinion generally reveals
some fact that clearly justifies the conclusion reached by the
court.   After a careful review of the many cases, we are con-
vinced that there is in fact but little conflict among the authorities.

[3] Certain rules that should guide the court in arriving at
the intention of the maker seem to be generally accepted.   The in-
tention of the maker is to be gathered, primarily, from the lan-
guage of the writing itself.   Sharp v. Hall, 86 Ala. 110, 5 South.
497, 11 Am. St. Rep. 28.   The above rule is declared by sections
928 and 1248, C. C.   This rule does not preclude the court, in
doubtful cases, from a consideration of the facts and circum-

stances under which the writing was made and which existed up to the death of the maker, and it is to be regretted that, in the case at bar, the facts and circumstances under which this writing was made were not disclosed. Among those things which may appear in the writing itself, and which the courts hold tend to show an intent to make a deed, are designation of it as a deed, recitation of consideration, particular description of the land, covenants of title, the sealing and acknowledging of the writing. The delivering and recording of the writing are also matters to be considered. Saunders v. Saunders, 115 Iowa, 275, 88 N. W. 329.

[4-5] There is one question that should always be borne in mind when interpreting a doubtful writing: How must it be interpreted to make of it a valid instrument? Section 1252, C. C., provides:

"A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable and capable of being carried into effect, if it can be done without violating the intention of the parties."

It stands conceded that, if the writing before us is not a deed, it has no validity whatever, as it was not executed and attested in accordance with the statutes relating to wills. There are peculiar reasons why the above rule should be most liberally applied under facts such as those before us. Actions, wherein the courts are called upon to interpret writings such as the one now before us, are almost always brought after the death of the makers thereof. Whatever may have been the full intent of the maker at the time he executed the writing—whether to vest a present interest with enjoyment thereof postponed, or to postpone both the vesting of title as well as the enjoyment of the interest sought to be conveyed—one thing is beyond dispute: the maker intended that, at least after his death, title should vest in the grantee named. And another fact beyond dispute is that the maker died without undoing whatever he attempted to accomplish, thus leaving unequivocal evidence that he died intending and expecting his grantee to have full title to the property. To declare such a writing to be invalid prevents the carrying out of such clear intent and vests the property otherwise than as intended by the maker thereof—a thing no court should do unless driven thereto by some

express provision of law.    To avoid such result, the intent of the
maker to do that which the law does not sanction should be clearly
and satisfactorily established.    As said in Jones, Law of Real
Property, § 527, quoting from Spencer v. Robbins, 106 Ind. 580,
5 N. E. 726:

"Unless an instrument which has been fully executed, from
every point of view, seems to be a nullity, it will not be intended
that the parties meant that it should be invalid, and some effect
will, if possible, be given it."

[6] Unless the clear intent of the maker is to the contrary, a
writing, not so executed as to be good as a will, should be given
effect as a deed if good as a deed, and a writing not so executed
as to be good as a deed should be given effect as a will if good
as a will.    Saunders v. Saunders, supra; West v. Wright, 115 Ga.
277, 41 S. E. 602; Abney v. Moore, 106 Ala. 131, 18 South. 60;
Hunt v. Hunt, 119 Ky. 39, 82 S. W. 998, 68 L. R. A. 180, 7 Ann.
Cas. 788.

[7] Is it clear that the makers of the writing before us did
not intend to convey a present interest in the property?    We think
not.    They made use of that form of instrument by means of
which a present interest is usually conveyed; they used words of
present conveyance; they described the land with particularity; the
habendum clause is in ordinary form; the makers covenanted that
they were seised in fee and that they had good right to sell and
convey; they executed and acknowledged the writing in accord-
ance with the law governing the execution and acknowledgment
of deeds, and not in accordance with the law prescribing the man-
ner of executing and attesting wills; in the very clause which
appellants contend renders this writing not a deed, the makers
designate it as a deed.    If, as contended by appellants, the mak-
ers were attempting to arrange their affairs "in such a manner as
would save to them both the title and right of possession during
their lives," why did they not use the method prescribed by law
for so doing?    Why did they not execute an instrument in the
form of a will and attest the same as the law requires?    It is
worthy of note that it does not appear that the makers' had no
other property; a person making a testamentary disposition of
property generally includes all his property and makes disposition
of it all.    There was no provision for payment of the debts of the

makers; a provision found in many instruments, in form of deeds, which have been construed by the courts to be testamentary in nature. We are convinced that the clear intent of the makers was to transfer fee title to the grantee subject to a life estate reserved to themselves; that upon the delivery and acceptance of the deed by the grantee both he and appellants became possessed of rights thereunder which could not be changed by any future acts of the makers. Our conclusion seems to be in harmony with the great weight of authority. In the following cases the writing before the courts were all in the usual form of, contained the usual provisions of, and were executed, acknowledged, and delivered as, deeds. Each contained a provision similar to the one in the writing before us. In Shackelton v. Sebree, 86 Ill. 616:

"This deed not to take effect until after my decease."

In Saunders v. Saunders, supra:

"The intention being that this deed shall not be in force or take effect until after the death of the grantor herein."

In Lauck v. Logan, 45 W. Va. 251, 31 S. E. 986:

"But it is hereby distinctly understood and stipulated that this deed shall take and be in full force and effect immediately after the said [grantor] shall depart this life, and not sooner."

In West v. Wright, supra:

"This deed shall take effect at my death."

In Abney v. Moore, supra:

"Provided always, and it is expressly understood, and agreed, that this conveyance is not to take effect until after my death, and that at my death the title to the foregoing * * * lands is to vest immediately in my said children."

In Wilson v. Carrico, 140 Ind. 533, 40 N. E. 50, 49 Am. St. Rep. 213:

The above obligation "to be of none effect until after the death of [grantors], then to be in full force."

In Wyman v. Brown, 50 Me. 139.

"This deed * * * not to take effect during my lifetime, and to take effect and be in force from and after my decease."

In Kelley v. Shimer, 152 Ind. 290, 53 N. E. 233:

"This deed is to take effect and be in full force on and after the death of this grantor."

In Hunt v. Hunt, supra:

"This deed is not to take effect until the death of the said [grantors]."

In Love v. Blauw, 61 Kan. 496, 59 Pac. 1059, 48 L. R. A. 257, 78 Am. St. Rep. 334:

"The estate in said lands and tenaments not to vest in said named grantees and their heirs until the death of [grantors], she reserving in herself a life estate therein. To have and to hold unto the said * * * grantees and their heirs from and after the death of the said [grantor]."

Among all the cases cited by appellants, we find but four that do not reveal facts clearly justifying the conclusion of the courts that the writing under consideration did not pass a present interest. These four reveal facts analogous to those before us, yet the courts held that the writings were not deeds. We refer to Donald v. Nesbit, 89 Ga. 290, 15 S. E. 367; Pinkham v. Pinkham, 55 Neb. 729, 76 N. W. 411; Murphy v. Gabbert, 166 Mo. 596, 66 S. W. 536, 89 Am. St. Rep. 736; Carlton v. Cameron, 54 Tex. 72, 38 Am. Rep. 620. We think, however, that the great weight of authority supports the following statement found in Wilson v. Carrico, supra:

"While it may be said, in regard to the point under consideration, that the authorities 'fight on both sides' of the question; however, we find that in the later decisions the courts are inclined to uphold a deed of this character, if, upon a reasonable interpretation of all its parts, it can be said that the grantor did not intend to create, or in other words execute, that which must be construed and held to be void. In construing written instruments, courts frequently do—and properly, too—give to an expression a meaning different from that which it ordinarily bears, in order to import sense into it, and make it speak that which, upon an inspection of the whole, the parties really intended that it should."

And we also believe the following from the same authority is peculiarly applicable to the facts before us:

"In Broom's Maxims, 540, in translating a fundamental maxim of the law, it is said: 'A liberal construction should be placed upon written instruments, so as to uphold them, if possible, and carry into effect the intention of the parties.' Applying the reason and the principle, as laid down by the authorities cited,

and guided by the rule of construction, that the clause in controversy must be construed most favorable to the grantee, we cannot hold that the grantors intended that this obligation was to be null and void; but we are constrained to decide that it conveyed a present interest in the real estate to the grantee, the full enjoyment of which was, by the subsequent clause, intended to be postponed until after the death of both of the grantors. By so holding, we carry into effect the intention of the parties, and we fail to recognize wherein this construction works an injury or injustice to any one."

The judgment appealed from is affirmed.